IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

SILVER BUCKMAN,

      Petitioner,

v.                                   Case No. 1:20-cv-00277

WARDEN REHERMAN,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Petitioner's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, request for an emergency injunction, motion to expedite, and motion for bail, as well Respondent's request that the petition be dismissed. (ECF Nos. 2, 3, 14, 21, 26). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned determines that Petitioner is clearly not entitled to relief; therefore, the undersigned **RECOMMENDS** that Petitioner's request for an emergency injunction, (ECF No. 3), be **DENIED**; that her motion to expedite, (ECF No. 21), be **DENIED**; that the § 2241 petition, (ECF No. 2), be **DENIED**; that Petitioner's motion for bail be **DENIED** (ECF No. 26); that Respondent's request for dismissal, (ECF No. 14), be **GRANTED**; and that this matter be **DISMISSED**, with prejudice, from the docket of the Court.

I.    **Factual and Procedural Background**

*A. Proceedings in this Court*

Petitioner, Silver Buckman ("Buckman"), submitted the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 20, 2020 while incarcerated within Federal Prison Camp, Alderson ("FPC Alderson"), located in Alderson, West Virginia. (ECF No. 2). In the petition, Buckman asserts that the Federal Bureau of Prisons ("BOP") abused its discretion in selecting inmates for assessment for transfer to home confinement in response to the COVID-19 pandemic, because the BOP considered factors beyond those listed in a memorandum issued by the Attorney General of the United States. (*Id.* at 2). Buckman believes that the BOP abused its discretion by erecting categorical barriers to release, thereby precluding an individualized assessment. (*Id.* at 2-3). Buckman requests that this Court order the BOP to properly review her eligibility for release, using only the factors set forth by the Attorney General. (*Id.* at 3).

Buckman submitted a contemporaneous request for an Emergency Injunction, again asking this Court to order the BOP to consider her for release to home confinement. (ECF No. 3). In that document, Buckman asserts correctly that, following the passage of the Coronavirus Aid, Relief and Economic Security ("CARES") Act, more inmates are now eligible for home confinement. (*Id.* at 1-2). Buckman further notes that on March 26, the Attorney General issued a memorandum to the BOP, which provides a list of factors the BOP should consider when assessing an inmate for transfer to home confinement in response to the COVID-19 pandemic. (*Id.* at 2-3).

Buckman claims that FPC Alderson's compliance with the directives in this memorandum has been "minimal," and staff at the prison have imposed a requirement, not present in the CARES Act or the Attorney General's directive, that an inmate serve at

2

least 50% of her sentence before being considered for release. (*Id.* at 4). Buckman alleges that this requirement is "an attempt to disqualify as much of the population as possible," and is invalid as it imposes additional blanket requirements. (*Id.* at 4–5). Buckman asserts that conversations with staff at FPC Alderson have led her to believe that an inmate will be rejected for early release unless she meets all of the criteria for consideration, a practice Buckman views as illegitimate in light of the Attorney General's memorandum. (*Id.* at 5-6).

Buckman notes that news organizations have warned of a high risk for contracting and developing complications from COVID-19 in prison due to the close quarters and inadequate healthcare in the facilities. (*Id.* at 6-7). Buckman further states that federal prison camps such as FPC Alderson lack the proper medical supplies and resources to sufficiently prevent or contain an outbreak of disease. (*Id.* at 7-8). Buckman details the living conditions at FPC Alderson, highlighting the close physical proximity of inmates and the impossibility of practicing social distancing measures that might reduce the risk of spreading disease. (*Id.* at 8-9).

Buckman concedes that she has not exhausted her administrative remedies with respect to this petition, but believes doing so would be futile, and that the serious health risk she faces outweighs the importance of complying with administrative exhaustion requirements. (*Id.* at 9-10). Buckman states that the requirement imposed by FPC Alderson that an inmate serve a certain portion of her sentence before being considered for transfer to home confinement is contrary to the intent of the CARES Act, and that she qualifies for an emergency injunction ordering the BOP to immediately consider her for release into home confinement. (*Id.* at 12-13).

On May 26, 2020, the undersigned entered an Order directing Respondent to answer or otherwise respond to the petition within 60 days of the entry of the Order. (ECF No. 9). On May 28, 2020, Buckman submitted a motion inquiring as to the status of her petition. (ECF No. 10). On June 1, 2020, Buckman filed a Motion requesting that her petition be treated as urgent. (ECF No. 12). In the motion, Buckman objected to the fact that Respondent had been granted 60 days to respond to her petition and asked that the deadline be amended to 14 days. (*Id.* at 1).

On June 2, 2020, the undersigned entered an Order granting Buckman's request for a status update, but denying her Motion to Treat the Petition as Urgent. (ECF No. 13). The undersigned noted that Buckman "provides no basis upon which her petition should be taken out of order and advanced to the front of the line." (*Id.* at 1). The undersigned concluded that the ongoing COVID-19 pandemic did not provide an adequate justification to grant Buckman expedited review as she was 41 years old, placing her in an age category that did not have an elevated risk of serious health complications, and had no underlying medical conditions which would make her case eligible for urgent treatment. (*Id.* at 1). Furthermore, at the time of filing, Alderson FPC had no reported cases of COVID-19 infections. (*Id.*).

On June 15, 2020, Buckman entered a Notice of Appeal to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), appealing the undersigned's denial of her request to treat the petition as urgent. (ECF No. 17). On June 24, 2020, Respondent submitted his Response to Buckman's petition. (ECF No. 14). Respondent states that BOP employees at FPC Alderson are assessing inmates for potential release to home confinement pursuant to the CARES Act and the Attorney General's memorandum. (*Id.* at 4). Respondent asserts that, to that end, the BOP has determined to give priority in

consideration to inmates who have either served 50% of their sentence, or have served 25% of their sentence and have 18 months or less remaining to serve. (*Id.* at 5). While inmates who meet these criteria are being considered first, according to the BOP, any inmate may submit a request to be transferred to home confinement and appeal any denial of such a request. (*Id.*).

Respondent notes that Buckman is currently serving a 42-month sentence imposed by the United States District Court for the Eastern District of Pennsylvania for violations relating to bank and wire fraud. She has only served 39.4 percent of her sentence. (*Id.*). Furthermore, Buckman has not submitted a request for consideration for home confinement or attempted to otherwise exhaust her administrative remedies. (*Id.*).

Respondent contends that Buckman is required to exhaust her administrative remedies with respect to this claim, and her failure to do so means her petition should be dismissed. (*Id.* at 6-7). Respondent concedes that the requirements imposed by FPC Alderson for priority consideration mean that Buckman has not qualified for immediate review, but he asserts that the decision is discretionary, and because Buckman has not requested release to home confinement, she can only speculate that such a request would be denied. (*Id.* at 8). Furthermore, Respondent contends that the decision to grant pre-release home confinement is committed to the BOP's discretion, and therefore, Buckman's objection to the manner in which the BOP has chosen to approach this task is not subject to judicial oversight. (*Id.* at 9–10). Respondent accordingly requests that Buckman's petition be denied. (*Id.* at 10).

Respondent attaches to the Response an affidavit prepared by Melissa Evans, a Case Manager Coordinator at FPC Alderson. (ECF No. 14-1 at 2). In the affidavit, Ms. Evans states that Buckman has not submitted a request for consideration for home

confinement, or any administrative remedies challenging a determination she is ineligible for such placement. (*Id.* at 6).

On June 25, 2020, the undersigned entered an order granting Buckman 60 days from the date of the order to submit a reply to Respondent's request her petition be denied. (ECF No. 15). On July 23, 2020, Buckman submitted a Motion to Expedite, in which she again requested that this Court expedite review of her petition. (ECF No. 21 at 1-2). Buckman also filed a contemporaneous Rebuttal to Respondent's request her petition be denied. (ECF No. 22).

In her rebuttal, Buckman contends that she has in fact submitted a written request for home confinement to her Unit Team but has not received a response from her case manager. (*Id.* at 2-3). She additionally argues that, even assuming she had not submitted a request, judicial review would still be appropriate because she raises a question regarding the legitimacy of the BOP's statutory construction of the CARES Act. (*Id.* at 3-4). Finally, Buckman asserts that exhaustion should be excused due to the imminent threat posed by COVID-19. (*Id.* at 4-5). Buckman argues that she suffers from a variety of medical conditions, including chronic periodontitis, hypertension, hyperlipidemia, obesity, and genital herpes. (*Id.* at 6). She believes the combination of her medical conditions means she is at a high risk for serious health complications if she were to contract COVID-19 in prison. (*Id.* at 7-12).

Buckman also describes the measures taken by FPC Alderson to mitigate the spread of COVID-19, which she believes to be inadequate to protect inmates. (*Id.* at 13-28). Buckman contends that the BOP has unreasonably interpreted the CARES Act by prioritizing inmates for consideration for home confinement based on time served, resulting in an interpretation that is arbitrary and capricious. (*Id.* at 29-32). She further

argues that the memorandum provided by the Attorney General amounted to a legislative rule which the BOP must follow. (*Id.* at 37-40).

Buckman alleges that the inconsistency in application of the CARES Act amounts to an Equal Protection violation. (*Id.* at 41). She explains that prior to June, prisoners were released to home confinement without demonstrating that they exhibited a high-risk factor for the COVID-19 virus, but the BOP now requires a prisoner to demonstrate that she is in a high-risk category before release will be considered. (*Id.*). Buckman contends that this difference in treatment between inmates seeking release currently, and inmates who sought release earlier, is a violation of constitutional equal protection rights. (*Id.*).

Buckman asserts that she has an effective release plan in place and would be a good candidate for release because she would live with and be financially supported by her husband in Cherry Hill, New Jersey. (*Id.* at 48). Buckman states that her family has been sufficiently isolating during the pandemic, and she would be at much less risk of contracting COVID-19 if released. (*Id.* at 48-49). Buckman further contends that the BOP's failure to release her violates the Eighth Amendment to the United States Constitution ("Eighth Amendment"), as it subjects her to cruel and unusual punishment. (*Id.* at 50). She requests an emergency temporary restraining order or preliminary injunction ordering the BOP to immediately release her to home confinement for the remainder of her term. (*Id.* at 52).

On August 10, 2020, Buckman submitted an expedited motion for bail pending final determination of her habeas corpus petition, reiterating many of her concerns about FPC Alderson's ability to ensure inmate safety given the ongoing threat of COVID-19. (ECF No. 26).

### B. Proceedings in Sentencing Court

Buckman was found guilty on twelve counts of violating federal fraud statutes on October 29, 2015, following a 17-day jury trial conducted in the Eastern District of Pennsylvania. *United States v. Buckman et. al.,* Case No. 2:14-cr-00540-RBS-1, (E.D.PA. Sep. 30, 2014) at ECF No. 180. After the resolution of post-trial motions, Buckman was sentenced to 42-months' imprisonment, with a 5-year term of supervised release, in the United States District Court for the Eastern District of Pennsylvania ("Sentencing Court") on January 9, 2019. *Id.* at ECF No. 325. On April 28, 2020, Buckman submitted a *pro se* Motion for Compassionate Release in the Sentencing Court. *Id.* at ECF No. 401 at 1, 11. In the motion, Buckman requested compassionate release due to the ongoing COVID-19 pandemic. *Id.* at 1-2. Buckman asserted that the BOP had acted improperly by narrowing the criteria for release in contravention to the guidance provided by Attorney General Barr and Congress. *Id.* at 9.

On June 25, 2020, an Emergency Motion for Compassionate Release filed by Buckman was entered onto the docket. *Id.* at ECF No. 403. In the motion, Buckman contended she was entitled to immediate release because her continued imprisonment amounted to a violation of the Eighth Amendment's proscription against cruel and unusual punishment. *Id.* at 1. Over the course of her 55-page motion, Buckman raised largely the same arguments as presented in this Court with respect to why she should be granted release from incarceration because of the ongoing pandemic. *Id.* at 1- 32. On July 13, 2020, Buckman submitted a supplement to her pending motion for compassionate release, detailing further medical complications that she felt made her eligible for release. *Id.* at ECF No. 407 at 3-4, 10.

On July 22, 2020, the Sentencing Court entered a memorandum opinion denying Buckman's request for compassionate release. *Buckman et. al.,* Case No. 2:14-cr-00540-RBS-1 at ECF No. 408. The Sentencing Court analyzed Buckman's request for compassionate release under a legal standard "distilled from a synthesis of the statute, the Sentencing Guidelines, and recent court decisions." *Id.* at 5. This legal standard considered "(1) whether 'extraordinary and compelling' reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community under § 3142(g); and (3) whether the § 3553(a) sentencing factors support a sentence reduction." (*Id.*). The Sentencing Court further noted that in order to demonstrate "extraordinary and compelling reasons" exist, courts have generally required defendants to show "(1) advanced age or a serious medical condition that places them at a high risk of serious complications or death if infected with COVID-19; and (2) a more than mere speculative risk of exposure to the virus at the prison where the inmate is housed." *Id.* at 6.

The Sentencing Court concluded that Buckman had failed to demonstrate she met those criteria, as she does not suffer from a serious medical condition. *Id.* Although Buckman asserted that she suffers from chronic gum inflammation, and chronic pain as a result of gingivitis and periodontitis, the Sentencing Court determined that these did not significantly increase her risk of encountering serious health difficulties if she were to contract COVID-19. *Id.* at 6-7. The Sentencing Court further noted that Buckman claimed she was immunocompromised due to a gum inflammation, cysts in her breasts, and a history of tobacco use, but that she had failed to demonstrate these ailments made her immunocompromised. (*Id.* at 7). The Sentencing Court additionally rejected Buckman's argument that her age, 41, increased her risk of serious illness from COVID-19. *Id.*

Next, the Sentencing Court found that Buckman failed to show "more than mere speculative risk of exposure to COVID-19 at Alderson FPC" as no known COVID-19 cases had been detected at that facility. *Buckman et. al.,* Case No. 2:14-cr-00540-RBS-1, ECF No. 408, at 8. Because the Sentencing Court found Buckman did not demonstrate extraordinary and compelling circumstances, further analysis of the other prongs governing compassionate release was not necessary, but the Court did note that the sentencing factors set forth in § 3553(a) would weigh against Buckman as she was found guilty of committing serious crimes that involved many victims and had only served a small portion of her sentence. *Id.* at 10. As to Buckman's assertion that she was suffering from cruel and unusual punishment, the Sentencing Court determined that such claims were not appropriate in a motion for compassionate release. *Id.* at 11-12.

## II.    <u>Standard of Review</u>

Respondent does not identify the standard under which he seeks dismissal of Buckman's petition; however, Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not

obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. (*Id.*) The court "may also consider documents attached to the complaint ... as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

## III.  <u>Discussion</u>

Petitioner's case relies on several distinct legal theories. She argues that this Court should order her release to home confinement because the threat posed to her by COVID-19 amounts to a violation of her rights under the Eighth Amendment, (ECF No. 22 at 50), and the BOP's policy for releasing inmates violates her rights to equal protection of the law. (ECF No. 22 at 41). She also contends that under a proper construction of the CARES Act, she is entitled to release or at least assessment for release to home confinement. (ECF No. 22 at 29).

For the reasons discussed below, this Court will construe Buckman's request for release as a motion for compassionate release under the First Step Act. Her constitutional challenges and statutory construction argument are discussed separately.

### A. Request for release under the First Step Act

Buckman filed contemporaneously a petition for habeas corpus under 18 U.S.C. § 2241 and a motion for emergency injunction. (ECF Nos. 2, 3). In these initial filings, she acknowledged that the Court cannot order her release to home confinement and instead requested injunctive relief ordering the BOP to consider her for release using only certain criteria. (ECF Nos. 2 at 3, 3 at 14). However, in her rebuttal to Respondent, Buckman changed course and asked this Court to order her release to home confinement to serve the rest of her sentence. (ECF No. 22 at 52).

Section 2241 confers "broad authority" on the court to "hear applications for writs of habeas corpus filed by persons claiming to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010) (quoting 28 U.S.C. § 2241). "[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Here, Buckman is not challenging the legality of her custody by attacking the validity of her convictions or sentence or suggesting that the BOP has erred in calculating her release date; rather, she contends she should be granted release from prison because of dangerous conditions at FPC Alderson due to COVID-19 and her own personal susceptibility to that disease. (ECF No. 22 at 51). This claim is not cognizable as a § 2241 habeas petition; however, because she is seeking release based on the threat posed to her by COVID-19, her request is properly construed as a petition for compassionate release under the First Step Act. *See Seth v. McDonough,* No. 8:20-CV-01028-PX, 2020 WL 2571168, at *8 (D. Md. May 21, 2020) (concluding that challenges based on possible exposure to COVID-19 could not be brought in § 2241 because they were not challenges

to the "fact or duration of confinement"); *see also McCarson v. Reherman*, No. 2:20-01386-HMH-MGB, 2020 WL 2110770, at \*2 (D.S.C. May 4, 2020) (finding that request for release under CARES Act not appropriate in a § 2241 petition and instead construing as request for compassionate release and transferring to sentencing court).

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (quoting 18 U.S.C. § 3582(c)). An exception to this general rule is provided by the compassionate release provision of the First Step Act ("FSA"). *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The FSA provides that a district court "may reduce the term of imprisonment" when certain circumstances are met. 18 U.S.C. § 3582(c)(1)(A). Nevertheless, Buckman's request cannot be examined by this Court. Although Buckman is incarcerated in the Southern District of West Virginia, compassionate release under § 3582 can only be granted by the court that sentenced her. *See Hill v. Streeval*, No. 7:20-CV-00309, 2020 WL 3065310, at \*3 (W.D. Va. June 9, 2020) ("Whether brought under § 3582 or the First Step Act, motions in which a convicted prisoner requests a reduction in his sentence are filed with the *sentencing* court, not with the court in the district where he is incarcerated."); *Hardin v. Acting Warden F.C.I. Edgefield*, No. CV 9:20-1420-SAL-BM, 2020 WL 3259761, at \*4 (D.S.C. May 6, 2020), *report and recommendation adopted*, No. 9:20CV1420-HMH-BM, 2020 WL 3259308 (D.S.C. June 16, 2020) (holding that the petitioner's request he be released due to COVID-19 concerns should be filed as a request for compassionate release in the sentencing court).

Buckman has already filed a nearly identical request in the Sentencing Court under the aegis of a request for compassionate release. *Buckman et. al.,* CASE No. 2:14-cr-00540-RBS-1 at ECF No. 401. The Sentencing Court has since denied this request, finding

that Buckman failed to establish she was entitled to compassionate release due to COVID-19. *Id.* at ECF No. 408. It is clear that this avenue was indeed an appropriate and available means for Buckman to raise the claims she makes in this § 2241 petition, and the Sentencing Court fully considered on the merits Buckman's claim that she was entitled to release due to COVID-19.

Accordingly, the undersigned **FINDS** that Buckman's request for early release from custody due to the risk presented by COVID-19 is not cognizable here and should be dismissed. Furthermore, the undersigned **FINDS** that Buckman properly raised the issue with the Sentencing Court and has recently received a ruling. Moreover, because Buckman's request for compassionate release was denied, the undersigned additionally **FINDS** that Buckman's request for bail pending resolution of her habeas corpus petition is moot and should be dismissed.

### B. Constitutional Claims

### 1. Eighth Amendment

Buckman claims that holding her in prison is a violation of the Eighth Amendment's proscription against cruel and unusual punishment due to the danger posed by the ongoing COVID-19 pandemic. (ECF No. 22 at 50). To state a claim under § 2241, a petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To determine whether a claim is cognizable under habeas corpus or under a civil rights action, a court must review whether the challenge is either to the fact or duration of the prisoner's confinement or instead to the conditions of the prisoner's confinement. *See Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017). While a habeas petition is appropriate when a prisoner seeks a "quantum change" in his level of custody, when he only "seeks a different program,

location, or environment, his challenge is to the conditions of his confinement rather than the fact of his confinement and his remedy is under civil rights law." *Sappleton v. Hogsten*, Civil Action No. 1:11–00552, 2014 WL 2565547, at *2 (S.D.W. Va. Jun. 6, 2014) (quoting *Campbell v. Deboo*, 2011 WL 1694454, at *2 (N.D.W. Va. May 4, 2011)).

Eighth Amendment challenges to the conditions of confinement are not properly addressed through habeas petitions and instead should be challenged in civil rights actions. *See Wilborn v. Mansukhani,* 795 F. App'x 157, 164 (4th Cir. 2019) (holding that § 2241 petitions are not appropriate avenue to raise conditions of confinement claims); *see also Roudabush v. Warden FCI Edgefield*, No. CV 8:18-1818-BHH-JDA, 2018 WL 3979858, at *1 (D.S.C. July 18, 2018*), report and recommendation adopted*, No. CV 8:18-1818-BHH, 2018 WL 3972257 (D.S.C. Aug. 20, 2018) (challenge alleging harassment, unsanitary food, and lack of mental health care not properly raised by § 2241 claim); *Crooker v. Stewart*, No. CIV.A. ELH-14-1972, 2015 WL 1210209, at *3 (D. Md. Mar. 13, 2015) (alleged Eighth Amendment violations  should be addressed by *Bivens* or §1983 action, not a § 2241 claim); *Toure v. Hott*, No. 1:20-CV-395, 2020 WL 2092639, at *5 (E.D. Va. Apr. 29, 2020) (claim alleging Eighth Amendment violations in light of COVID-19 pandemic not cognizable in § 2241 petition); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement…. A civil rights action, in contrast, is the proper method for challenging 'conditions of confinement'"). Thus, because Buckman's Eighth Amendment claims challenge the conditions of her confinement, and not the duration or fact of her sentence, the undersigned **FINDS** that these claims should be dismissed as they are not cognizable under § 2241.

### 2. Equal Protection

Buckman asserts that inconsistency in application of the CARES Act amounts to an Equal Protection violation. *(*ECF No. 22 at 41). Buckman explains that before June, inmates were released to home confinement without demonstrating a high-risk factor for the COVID-19 virus, but the BOP now requires a prisoner demonstrate she is in a high-risk category before release is considered. (*Id.*). Buckman contends that this difference in treatment between inmates seeking release now and inmates who sought release earlier is a violation of constitutional equal protection rights. (*Id.*).

The Equal Protection Clause provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV., § 1. The Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (internal quotation marks omitted). The Equal Protection clause also applies to actions taken by the federal government via the 5th Amendment to the United States Constitution. *Boiling v. Sharpe*, 347 U.S. 497 (1954).

To succeed on her equal protection claim, Buckman must first demonstrate that she has been treated differently from others with whom she is similarly situated. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Buckman objects to an alleged change in the BOP's policy, which, according to her, requires that inmates now have a risk factor related to COVID-19 before being considered for compassionate release, whereas before such a factor was not required. (ECF No. 22 at 41). Buckman does not challenge the difference in treatment between those who have demonstrated they are at greater risk from COVID-19 and those who have not, but rather the distinction between inmates who were released before the policy change and individuals now subject to it. This does not

raise a valid equal protection clause claim.

Instead, if Buckman wishes to challenge this policy as a violation of the equal protection clause, she must show that the policy *currently* treats similarly situated inmates differently, not that inmates are now treated differently than they were treated before a new policy was instituted. Because she makes no such assertion and offers no evidence supporting a difference in treatment between similarly situated inmates, the undersigned **FINDS** that this claim should be dismissed as it is without merit.

### C. The BOP's Interpretation of the CARES Act

### 1. The BOP's Prioritization of Inmates for Review Based on Time Served

At the heart of Buckman's claim for injunctive relief is her contention that the BOP's process for reviewing eligibility for home confinement is impermissible, because it runs counter to the intent of the CARES Act (ECF No. 22 at 29–35). She argues that, because the BOP is currently prioritizing review for inmates who have already served 50% of their sentence or 25% with less than 18 months remaining, the BOP is disqualifying most of the inmate population for transfer to home confinement. (ECF No. 3 at 11). According to Buckman, the purpose of the CARES Act is to reduce the prison population and provide space for social distancing, and the BOP's requirement regarding time-served makes it impossible to carry out Congress's objective. (*Id.*). She asks the Court to order the BOP to review her eligibility under the specific factors outlined by the Attorney General in his March 26 memorandum, notwithstanding that she has served less than 50% of her sentence. (*Id.* at 14.).

Respondent correctly notes that the CARES Act does not limit the BOP's discretion to determine whether an inmate is transferred to home confinement, but in fact expands

the class of inmates who may be eligible for such transfer. (ECF No. 14 at 9–10). The CARES Act provides that "the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" during the period for which the Attorney General has found that emergency conditions affect BOP operations. Pub. L. No. 116-136, § 12003(b)(2). When the emergency period is not in effect, the BOP's discretion is limited by 18 U.S.C. 3624(c)(2), which only allows the BOP to place lower-risk inmates in home confinement for "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." In its discretion, the BOP chose to widen the pool of eligible inmates by opening review to those who would not be eligible under the text of § 3624, namely, those who have served less than 90% of their sentence and have more than 6 months remaining. This is plainly an exercise of the additional leeway granted to the BOP in the CARES Act.

Furthermore, the BOP's filling of the statutory gap left to its discretion is "reasonable in light of the legislature's revealed design." *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (citations omitted) (holding that a regulation categorically excluding certain inmates for consideration for early release is permissible). Reliance on the percentage of a sentence served in order to prioritize review is not an abuse of discretion. Congress took such an approach in granting the BOP authority under § 3624(c)(2), and it is rational to look to the statutory scheme for guidance in determining where to begin review of inmates newly eligible under the CARES Act. Therefore, the BOP's use of time served to prioritize reviewing inmates for release to home confinement is permissible.

### 2. Legal Effect of the Attorney General's March 26 Memorandum

Buckman contends that the March 26 memorandum from the Attorney General constitutes a "legislative rule" to which the BOP must adhere. (ECF No. 22 at 37–40). The

memorandum advised the BOP to prioritize its use of home confinement and provided general guidance and a list of factors for the BOP to consider when assessing an inmate's discretionary release. (ECF No. 22-2 at 3).

Section 12003(b)(2) of the CARES Act gives the Attorney General authority to make an emergency finding, which triggers a relaxation of the prerequisites for an inmate to be considered for home confinement under § 3624(c)(2). However, the CARES Act does not provide the Attorney General with any additional authority over the BOP's discretionary power to utilize home confinement in carrying out its duties. The Attorney General may express the wishes of the executive branch, or provide direction as to its policies, but the CARES Act does not shift authority away from the Director of the BOP to determine whether to transfer an inmate. In fact, the BOP has no obligation to consider *any* inmate for home confinement, because the statute provides that the BOP's authority under § 3624 "*may* be used to place a prisoner in home confinement." No other provision directs the BOP to employ its discretion in a particular way, and the Attorney General cannot bind the BOP to any course of action. The memorandum is not a binding legislative rule.

Even if it were, the memorandum itself neither states nor implies that the list of factors it sets forth should be the exclusive criteria for assessing an inmate's suitability for home confinement; in fact, the Attorney General specifically designates the list as "non-exhaustive." (ECF 22-2 at 3). A list such as this which leaves ample room for the exercise of discretion cannot form the basis for an injunction.

Because the BOP's implementation of its statutory authority pursuant to the CARES Act is permissible, the undersigned **FINDS** that Buckman is not entitled to injunctive relief.

## IV.    <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES that** Petitioner's request for an emergency injunction, (ECF No. 3), be **DENIED**; that her motion to expedite, (ECF No. 21), be **DENIED**; that the § 2241 petition, (ECF No. 2), be **DENIED**; that Petitioner's motion for bail be **DENIED** (ECF No. 26); that Respondent's request for dismissal, (ECF No. 14), be **GRANTED**; and that this matter be **DISMISSED**, with prejudice, from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and counsel of record.

**FILED:** August 31, 2020

_____
Cheryl A. Eifert
United States Magistrate Judge