IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

SILVER BUCKMAN,

    Plaintiff,

v.                               CIVIL ACTION NO. 1:20-00277

WARDEN REHERMAN,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

By Standing Order, this action was referred to United States Magistrate Judge Cheryl A. Eifert for submission of findings and recommendations regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Magistrate Judge Eifert submitted to the court her Findings and Recommendation on August 31, 2020, in which she recommended that the district court deny plaintiff's request for an emergency injunction; deny plaintiff's motion to expedite; deny plaintiff's petition for a writ of habeas corpus; deny plaintiff's motion for bail; grant respondent's request for dismissal; dismiss plaintiff's petition under 28 U.S.C. § 2241 with prejudice; and remove this matter from the court's docket.

In accordance with the provisions of 28 U.S.C. § 636(b), the parties were allotted fourteen days, plus three mailing days, in which to file any objections to Magistrate Judge Eifert's Findings and Recommendation. The failure of any party to file such objections constitutes a waiver of such party's right to a de novo review by this court. Snyder v. Ridenour, 889 F.2d 1363

(4th Cir. 1989).   Moreover, this court need not conduct a <u>de novo</u> review when a plaintiff "makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  <u>Orpiano v. Johnson</u>, 687 F.2d 44, 47 (4th Cir. 1982).

Buckman timely filed objections to the PF&R.  <u>See</u> ECF No. 30.  On September 21, 2020, she filed an exhibit in support of her objections.  <u>See</u> ECF No. 33.  And, on October 21, 2020, she filed a supplement to her objections.  <u>See</u> ECF No. 35.  With respect to Buckman's objections, the court has conducted a <u>de novo</u> review.

On October 29, 2015, Buckman was found guilty on twelve counts of fraud after a jury trial in the Eastern District of Pennsylvania.  <u>See</u> ECF No. 28 at 8.  On October 19, 2019, she was sentenced to a term of imprisonment of 42 months.  <u>See</u> <u>id.</u> Buckman is currently incarcerated at Federal Prison Camp, Alderson ("FPC Alderson"), located in Alderson, West Virginia.

Buckman filed the instant petition because of the BOP's failure to transfer her to home confinement in light of the COVID-19 pandemic.  Magistrate Judge Eifert's PF&R is thorough and comprehensive and provides an excellent account of the various arguments Buckman raises that, according to her, entitle her to habeas relief.  Construing Buckman's request for release as a motion for compassionate release under the First Step Act,

2

Magistrate Judge Eifert found that such a request was not
cognizable in this court and, therefore, her petition should be
dismissed.  As Magistrate Judge Eifert noted, Buckman's request
to be released due to concerns with COVID-19 should be filed as a
request for compassionate release in the sentencing court.  See
id. at 12-14.  The PF&R further noted that Buckman had filed such
a motion with the sentencing court on April 28, 2020.  See id. at
8.  On July 22, 2020, the sentencing court denied her request for
compassionate release.  See id. at 9.

　　　With respect to Buckman's Eighth Amendment claim, the
PF&R found that such a claim was not cognizable under § 2241.
See id. at 15.  The PF&R further recommended that Buckman's equal
protection claim be dismissed as meritless.  See id. at 17.
Finally, the PF&R found that Buckman was not entitled to
injunctive relief.  See id. at 19.

　　　Buckman's first objection is that the PF&R inaccurately
states that she seeks release from custody.  See ECF No. 30 at 2
("The Magistrate states that the Petitioner is seeking release
from custody based upon the threat posed to her by COVID-19
through the conditions at FPC Alderson and her own susceptibility
to the disease.  However, the Petitioner does not seek release
from custody.  Rather, she seeks a proper review for transfer to
home confinement, wherein, she would remain within the custody of
the BOP.").  This is a distinction without a difference.  As the

PF&R notes, Buckman specifically asked for an order of the court "ordering her immediate release to home confinement to serve the remainder of her sentence." See ECF No. 22 at 52. And, whether or not such a request is cognizable in § 2241, see Hill v. Streeval, Civil Action No. 7:20-cv-00309, *2 n.4 (W.D. Va. June 9, 2020) (comparing cases deciding the issue differently), the court is unable to grant it. See 18 U.S.C. § 3621(b) (granting broad discretion to the BOP to designate an inmate's place of imprisonment); Touizer v. Attorney General of the United States, Case No. 20-cv-25169-BLOOM, 2021 WL 371593, *3 (S.D. Fl. Feb. 3, 2021) ("Based on the clear statutory language of 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this Court has no authority to grant Petitioner's request for placement in home confinement. Rather, § 3624(c)(2) grants the BOP the exclusive authority to determine an inmates place of confinement. The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement.") (internal citation and quotation omitted); United States v. Moore, 3:17-cr-364-MOC-DSC-1, 2021 WL 53349, *4 (W.D.N.C. Jan. 6, 2021) ("[T]his court also denies Defendant's alternative request for an order directing the BOP to transfer him to home confinement. Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. . . . A court has no authority to designate a prisoner's place of incarceration. . . . Because

Defendant's request for home confinement alters only the place of

incarceration, not the actual term of incarceration, only BOP may

grant or deny his request."); see also McKune v. Lile, 536 U.S.

24, 39 (2002) ("It is well settled that the decision where to

house inmates is at the core of prison administrators'

expertise.").

Buckman next objects to the PF&R's finding that she has

not stated an equal protection claim because she has not shown

she is being treated differently from other similarly situated

individuals.  Buckman disagrees and argues that (1) she is being

discriminated against because she is an inmate; and (2) that

other high-profile defendants are receiving more favorable

treatment.  Buckman misunderstands the nature of equal

protection.

Equal protection under the law does not require the

government to treat everyone the same way.  As our appeals court

recently noted,

> The Equal Protection Clause, which prohibits
> States from denying persons "the equal protection
> of the laws," U.S. Const. amend. XIV, § 1, "keeps
> governmental decisionmakers from treating
> differently persons who are in all relevant
> respects alike." Nordlinger v. Hahn, 505 U.S. 1,
> 10, 112 S. Ct. 2326, 120 L. Ed. 1 (1992).  And to
> state a claim for violation of the Clause, a
> plaintiff must plausibly allege first "that he has
> been treated differently from others with whom he
> is similarly situated and that the unequal
> treatment was the result of intentional or
> purposeful discrimination."  Martin, 858 F.3d at
> 252 (cleaned up).  But that showing does not

secure the claim, as the plaintiff must also
plausibly allege that the disparity was not
justified under the appropriate level of scrutiny.
Id.  To account for the unique health and welfare
concerns in the prison context, our review of a
plaintiff's challenge to a prison decision or
policy is more demanding, as we "accord deference
to the appropriate prison authorities."  Turner v.
Safley, 482 U.S. 78, 85, 107 S. Ct. 2254, 96 L.
Ed.2d 64 (1987).  Under this deferential standard,
the prisoner must allege that "the disparate
treatment [was not] reasonably related to any
legitimate penological interests."  Veney v. Wych,
293 F.3d 726, 732 (4th Cir. 2002) (cleaned up).

Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020).

First, to the extent that Buckman complains of being

treated differently than other West Virginia residents, see ECF

No. 30 at 3-4 ("[T]he Petitioner is unable to practice the same

protective measures as other West Virginians. . . .  As the

Petitioner is confined in a facility in West Virginia, the State

is legally obligated to mitigate her risk. . . .   [T]he

Petitioner is being discriminated against because she is an

inmate."), her claim is without merit because "[t]he Constitution

does not require things which are different in fact . . . to be

treated in law as though they were the same."  Tigner v. Texas,

310 U.S. 141, 147 (1940).  As the Court has made clear, "simply

because prison inmates retain certain constitutional rights does

not mean that these rights are not subject to restrictions and

limitations."  Bell v. Wolfish, 441 U.S. 520, 545 (1979).

"Prisoners are not similarly situated to non-prisoners."  Roller

v. Gunn, 107 F.3d 227, 234 (4th Cir. 1997); see also Mays v.

LaRose, 951 F.3d 775, 788 (6th Cir. 2020) ("[T]here are countless reasons that jail-confined citizens are not similarly situated to those outside jail.").  Therefore, because Buckman is not similarly situated to non-inmates, there is no equal protection violation based upon any disparity in treatment between the two groups.

Likewise, her equal protection claim alleging she was treated differently than "high-profile prisoners" Paul Manafort and Shaka [sic] Fattah fails for the same reason:  she cannot show that she is similarly situated to these inmates.  Cf. United States v. Groover, No. 20-12925, 2021 WL 391882, *3 (11th Cir. Feb. 4, 2021) (finding no merit to inmate's Equal Protection Clause argument where "there were ample reasons . . . for the district court to deny Groover's request for compassionate release despite previously having granted the requests of other sick inmates"); Rowe v. Cuyler, 534 F. Supp. 297, 301 (E.D. Pa. 1982) ("[I]t is difficult to believe that any two prisoners could be considered similarly situated for the purpose of judicial review on equal protection grounds of broadly discretionary decisions because such decisions may legitimately be informed by a broad variety of an individual's characteristics.").

Finally, Buckman's claim that the BOP's process for reviewing eligibility for home confinement is impermissible lacks merit.  The CARES Act expanded the maximum period an inmate may

spend on home confinement.  The CARES Act provides "if the

Attorney General finds that emergency conditions will materially

affect the functioning of the [BOP], the Director of the Bureau

may lengthen the maximum amount of time for which the Director is

authorized to place a prisoner on home confinement."  CARES Act §

12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020).

On April 3, 2020, the Attorney General determined that

emergency conditions were materially affecting the functioning of

the BOP, and thereby triggered the BOP's authority to expand the

amount of time that an inmate may spend on home confinement.

Thus, the CARES Act gives the BOP discretion and authority to

place inmates in "prerelease custody" under 18 U.S.C. §

3624(c)(2)."  See BOP Program Statement No. 7320.01.  Prior to

the CARES Act, Section 3624(c)(2) limited the BOP's authority to

"place a prisoner in home confinement for the shorter of 10

percent of the term of imprisonment of that prisoner or 6

months."  The CARES Act, however, temporarily suspends the above

limitation.  The CARES Act, as implemented by the Attorney

General, expanded the authority of the BOP to review "all at-risk

inmates – not only those who were previously eligible for

transfer."  Id.  The CARES Act, however, "does not mandate home

confinement for any class of inmate."  Valenta v. Ortiz, 1:20-cv-

3688(NLH), 2020 WL 1814825, * 1 (D.N.J. April 9, 2020)(emphasis

added).

The Attorney General issued guidance for "prioritizing" home confinement for "at-risk inmates who are nonviolent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities."  See BOP Program Statement No. 7320.01.  The BOP is to "consider the totality of circumstance for each individual inmate" based on the following non-exhaustive factors:

> • The age and vulnerability of the inmate to COVID-19, in accordance with the Centers for Disease Control and Prevention (CDC) guidelines;
>
> • The security level of the facility currently holding the inmate, with priority given to inmates residing in low and minimum security facilities;
>
> • The inmate's conduct in prison, with inmates who have engaged in violent or gang related activity in prison or who have incurred a BOP violation within the last year not receiving priority treatment under this Memorandum;
>
> • The inmate's score under PATTERN, with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum;
>
> • Whether the inmate has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate would be confined upon release would present lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility; and
>
> • The inmate's crime of conviction, and assessment of the danger posed by the inmate to the community. Some offenses, such as sex offense, will render an inmate ineligible for home detention.  Other serious offenses should weigh

9

> more heavily against consideration for home
> detention.

Wragg v. Ortiz, 462 F. Supp.3d 476, 493-94 (D.N.J. 2020).  As

clearly stated above, an inmate's qualification for early release

on home confinement under the CARES Act is an individualized

determination by the BOP.  Significantly, "the Attorney General

permitted the BOP wide discretion in determining when to release

a prisoner to home confinement based on the risks posed by COVID-

19 in the prisons."  Gallo v. Ortiz, Civ. No. 20-16416(RMB), 2021

WL 571600, *3 (D.N.J. Feb. 16, 2021).

Against this backdrop, Buckman asks the court to order

"the BOP to act pursuant to its authority so as to avoid a

constitutional violation."  ECF No. 30 at 12.  However, as the

PF&R notes, "the BOP has no obligation to consider any inmate for

home confinement because the statute provides that the BOP's

authority under § 3624 'may be used to place a prisoner in home

confinement.'"  ECF No. 28 at 19 (quoting 18 U.S.C. § 3624); see

also Miller v. Beard, CIVIL ACTION NO. 21-11-DLB, 2021 WL 265265,

*2 (E.D. Ky. Jan. 26, 2021) ("[W]hile the CARES Act authorizes

the BOP to consider placing an inmate in home confinement

pursuant to 18 U.S.C. § 3624(c), it does not require it to do

so.").  Furthermore, even though the BOP did not find that

Buckman met the criteria for priority consideration for a home

confinement placement, she nevertheless could have submitted a

request for home confinement to her unit team which she has not done.  See ECF No. 14-1.

 And, as the PF&R further notes, Buckman has not exhausted her administrative remedies.  In other words, Buckman seeks judicial review of a prison placement decision under § 2241 but she doesn't want to follow the rules for doing so.  Therefore, setting aside whether § 2241 is the proper vehicle for plaintiff's request, see Cruz v. Jenkins, Case No. 20-CV-03891-LHK, 2020 WL 6822884, *3 (N.D. Cal. Nov. 20, 2020) ("[T]he BOP's determination remains discretionary and outside the scope of a Section 2241 petition even if the petition purports to rely on the CARES Act."), her failure to exhaust is fatal to proceeding under § 2241.  See Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010) (explaining that exhaustion is required before a habeas action may be brought); see also Morales-Herrera v. Owen, Civil Action No. 6:12-825-RBH, 2002 WL 34729276, *1 (D.S.C. Oct. 26, 2002) ("It is well-settled that a federal prisoner is required to exhaust his administrative remedies within the BOP before filing an action pursuant to § 2241.").  In any event, "the rising tide of case law has consistently held that it is the responsibility of the Bureau of Prisons, and not the courts, to make these COVID related release determinations." Brennerman v. White, Civil No. 3:20-CV-1069, 2020 WL 8617622, *6 (M.D. Pa. Dec. 10, 2020).

11

Having reviewed the Findings and Recommendation filed by Magistrate Judge Eifert, the court hereby **OVERRULES** plaintiff's objections and adopts the findings and recommendations contained therein.  Accordingly, the court hereby **DENIES** plaintiff's request for an emergency injunction; **DENIES** plaintiff's motion to expedite; **DENIES** plaintiff's petition for a writ of habeas corpus; **DENIES** plaintiff's motion for bail; **GRANTS** respondent's request for dismissal; **DISMISSES** plaintiff's petition under 28 U.S.C. § 2241 with prejudice; and directs the Clerk to remove this case from the court's active docket.

Additionally, the court has considered whether to grant a certificate of appealability.  See 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to plaintiff, pro se, and counsel of record.

**IT IS SO ORDERED** this 26th day of March, 2021.

ENTER:

David A. Faber
Senior United States District Judge

13